# In the United States Court of Federal Claims

No. 14-596 C (Lead)
Con. Nos. 13-88, 14-590, 14-594, 14-599, 14-600, 14-610, 14-612

(E-Filed March 28, 2017)

| | | |
|---|---|---|
| FLORIDA HOME MEDICAL SUPPLY, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | Motion to Dismiss for Lack of Subject Matter Jurisdiction under RCFC 12(b)(1); Medicare Prescription Drug, Improvement, and Modernization Act; 42 U.S.C. § 1395w-3 (2012); Administrative Review Permissive, not Mandatory. |

Jerry Stouck, Washington, D.C., for plaintiff.

Gregg M. Schwind, Senior Trial Counsel**,** with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Robert E. Kirschman, Jr., Director; and Steven J. Gillingham, Assistant Director, David M. Kerr, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

OPINION

CAMPBELL-SMITH, Judge

This case arises from defendant's termination of contracts for the provision of medical supplies to Medicare beneficiaries. Fourteen of the parties with whom defendant entered such contracts have filed eight separate lawsuits. The fourteen parties are now seeking compensation under breach of contract and takings theories. The cases have been consolidated for purposes of determining liability and this case has been designated

as the lead case. See ECF No. 35.[1] The consolidated member cases include: B&H Medical, LLC v. United States, Case No. 13-88; Advacare Home Services, Inc., et al. v. United States, Case No. 14-590; All-States Medical Supply, Inc. v. United States, Case No. 14-594; American Home Health Care, Inc. v. United States, Case No. 14-599; Plus Medical, LLC v. United States, Case No. 14-600; Discount Diabetic, LLC v. United States, Case No. 14-610; and DDS Holdings, Inc. v. United States, Case No. 14-612. See id.[2]

Now before the court is defendant's motion to dismiss plaintiff's breach of contract claims for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) and for failure to state a claim, RCFC 12(b)(6), on which relief may be granted. See ECF No. 13. The motion to dismiss was initially filed in response to Florida Home Medical Supply, Inc.'s complaint. See ECF No. 13. In the order consolidating the cases, however, the court determined that its decision on the motion to dismiss would be binding on plaintiffs in seven of the eight member cases, and directed plaintiffs in those cases to file responses to defendant's motion. See ECF No. 35 at 2. Plaintiff in B&H Medical, LLC v. United States, Case No. 13-88, is not bound by the court's decision on this motion to dismiss because its complaint previously survived a motion to dismiss. See B&H Medical, LLC v. United States, 116 Fed. Cl. 671 (2014).

For the following reasons, defendant's motion to dismiss is **DENIED**.

## I. Background

Medicare benefits, which are administered by the Center for Medicare & Medicaid Services (CMS), include, in part, outpatient services, durable medical equipment, and certain prescription medications. See 42 U.S.C. § 1395m(a) (2012). "Durable medical equipment" includes items such as hospital beds, wheelchairs, and diabetes testing equipment. See 42 U.S.C. § 1395x(n) (2012); 42 C.F.R. § 414.202 (2012). These

---

[1] Unless otherwise noted, docket references are made to the docket in Case No. 14-596, which has been designated as the lead case by agreement of all plaintiffs. See ECF No. 35 at 2.

[2] These cases were also consolidated with a ninth case, Cardiosom, LLC v. United States, Case No. 08-533, for purposes of discovery. See ECF No. 25. Cardiosom was dismissed for failure to prosecute, and therefore, is no longer a part of the set of consolidated cases. See Cardiosom, Case No. 08-533, ECF No. 117.

benefits are part of what is known as "Medicare Part B." See 42 U.S.C. §§ 1395j-1395w-6 (2012).

From 1989 to 2003, Medicare Part B paid the covered portion of durable medical equipment on the basis of a fee schedule. See 42 U.S.C. § 1395m(a) (2012). In 2003, Congress enacted the Medicare Prescription Drug, Improvement, and Modernization Act (MMA), which established a competitive bidding program to replace the fee schedules. See 42 U.S.C. § 1395w-3 (2012). Under the Durable Medical Equipment, Prosthetics, Orthotics, and Supplies Competitive Acquisition Program (DMEPOS CAP), suppliers, such as plaintiffs in this litigation, compete to win contracts under which they would provide certain equipment in specific geographic areas at fixed prices. See 42 U.S.C. § 1395w-3(b)(5) (2012).

In June 2008, CMS entered into an initial round of DMEPOS CAP contracts with approximately 300 suppliers. See ECF No. 13 at 11. Plaintiffs in the consolidated cases were among the awardees. Each plaintiff submitted one or more successful bids under the DMEPOS CAP, and effective July 1, 2008, each plaintiff contracted with CMS to provide specified durable medical equipment in one or more geographic areas for a period of three years. See Florida Home Med. Supply, Case No. 14-596, ECF No. 1 at 3-4; Advacare Home Servs. et al, Case No. 14-590, ECF No. 7 at 6; All-States Med. Supply, Case No. 14-594, ECF No. 1 at 3-4; Am. Home Health Care, Case No. 14-599, ECF No. 1 at 3-4; Plus Med., Case No. 14-600, ECF No. 1 at 3-5; Discount Diabetic, Case No. 14-610, ECF No. 5 at 3-4; and DDS Holdings, Case No. 14-612, ECF No. 10 at 3-5.

The following month, on July 15, 2008, Congress enacted the Medicare Improvements for Patients and Providers Act of 2008 (MIPPA), Pub. L. No. 110-275, 122 Stat. 2494 (codified at 42 U.S.C. § 1395w–3). The MIPPA terminated all DMEPOS CAP contracts executed by CMS in the initial round of contracting to begin the competitive bidding procedures. See 42 U.S.C. § 1395w-3(a)(1)(D)(i). That provision reads, in relevant part, as follows:

> (D) Changes in competitive acquisition programs
>
> (i) Round 1 of competitive acquisition program
>
> Notwithstanding subparagraph (B)(i)(I) and in implementing the first round of the competitive acquisition programs under this section—

> (I) the contracts awarded under this section before July 15, 2008, are terminated, no payment shall be made under this subchapter on or after July 15, 2008, based on such a contract, and, to the extent that any damages may be applicable as a result of the termination of such contracts, such damages shall be payable from the Federal Supplementary Medical Insurance Trust Fund under section 1395t of this title;
>
> . . .
>
> Nothing in subclause (I) shall be construed to provide an independent cause of action or right to administrative or judicial review with regard to the termination provided under such subclause.

42 U.S.C. § 1395w-3(a)(1)(D)(i) (2012).

    Pursuant to this statutory language, CMS created an administrative claims process for suppliers whose contracts were terminated. See ECF No. 13 at 12. The rule relating to the claims process appears as a regulation at 42 C.F.R. § 414.425 (2012). The regulation outlines details of the process such as the deadline for filing claims, the required content of the claims, and limitations on recovery on a successful claim. See id. The regulation also states, "[t]he Determining Authority's determination is final and not subject to administrative or judicial review." 42 C.F.R. § 414.425(f)(2)(vi) (2012).

    Following the termination of their respective contracts, plaintiffs in the consolidated cases proceeded along one of two paths. Florida Home Medical Supply, Discount Diabetic, and DDS Holdings worked through the administrative process, and the remaining eleven plaintiffs elected not to participate in the administrative process and filed claims with the court. CMS made a partial payment of Florida Home Medical Supply's claim, but denied compensation to Discount Diabetic and DDS Holdings. See Florida Home Med. Supply, Case No. 14-596, ECF No. 13 (defendant's motion to dismiss stating that plaintiff filed a claim and received partial payment thereon), ECF No. 14 (plaintiff's response acknowledging same); Advacare Home Servs., Case No. 14-590, ECF No. 14 at 9 (defendant's motion to dismiss stating that plaintiff did not participate in the administrative claims process); All-States Med. Supply, Case No. 14-594, ECF No. 13 at 8-9 (defendant's motion to dismiss stating that plaintiff did not participate in the administrative claims process), Case No. 14-596, ECF No. 37 at 2 (plaintiff's supplemental response filed after consolidation, stating that plaintiff did not participate in the claims process); Am. Home Health Care, Case No. 14-599, ECF No. 10 at 8-9

(defendant's motion to dismiss stating that plaintiff did not participate in the administrative claims process), Case No. 14-596, ECF No. 45 at 5 (plaintiff's supplemental response filed after consolidation, noting that plaintiff did not participate in the claims process); Plus Med., Case No. 14-600, ECF No. 15 at 8 (defendant's motion to dismiss stating that plaintiff did not participate in the administrative claims process).Discount Diabetic, Case No. 14-596, ECF No. 39 at 2 (plaintiff's supplemental response filed after consolidation, noting that CMS denied plaintiff's administrative claim in its entirety); and DDS Holdings, Case No. 14-596, ECF No. 44 at 2 (plaintiff's supplemental response filed after consolidation, noting that CMS denied plaintiff's administrative claim).[3]

II.     Legal Standards

Defendant asks the court to dismiss plaintiffs' claims, nominally on the basis of both a lack of jurisdiction and failure to state a claim upon which relief may be granted. See ECF No. 13 at 1. Its substantive analysis of the complaints, however, focuses on this court's lack of jurisdiction. Defendant explains:

> Our position is this. In enacting MIPPA, Congress terminated the contracts, directed that any contract termination damages be paid from the Medicare Trust Fund, and barred any further administrative or judicial review. Congress must have intended that CMS establish an administrative process as the exclusive remedy for damages related to the termination of the Medicare supply contracts, with no independent cause of action or judicial review in this or any Court.

ECF No. 13 at 9.

Defendant makes no argument with regard to plaintiffs' alleged failure to state a claim, under RCFC 12(b)(6). Thus, the court will evaluate defendant's motion under RCFC 12(b)(1), as seeking dismissal for lack of subject matter jurisdiction.

---

[3] The court notes that although the complaints did not identify which plaintiffs participated in the administrative claims process and which did not, there is apparently no disagreement between the parties as to the fact and/or status of the various claims. As such, the court has considered the position that each plaintiff is in with regard to such participation in analyzing whether subject matter jurisdiction exists. See Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985) ("In deciding a Rule 12(b)(1) motion, the court can consider ... evidentiary matters outside the pleadings.").

Pursuant to the Tucker Act, this court has limited jurisdiction to hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a) (2012).  Plaintiff bears the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence.  See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint.  RCFC 12(h)(3).

III.   Analysis

Defendant's position, essentially, is that the CMS administrative claims process is the exclusive remedy available to plaintiffs, and as such, this court lacks jurisdiction to consider any part of plaintiffs' complaints.  See ECF No. 13 at 9.  This issue is not entirely novel.  In Cardiosom, L.L.C. v. United States, a case that was previously consolidated for purposes of discovery with the set of cases now before the court, the Federal Circuit held that the MIPPA "left untrammeled the subject matter jurisdiction of the Court of Federal Claims to hear and decide breach of contract claims resulting from these terminations."  Cardiosom, L.L.C. v. United States, 656 F.3d 1322, 1330 (Fed. Cir. 2011).

In reaching this conclusion, the court outlined three plausible interpretations of the provision that allegedly strips this court of jurisdiction, and explained that, "[a]bsent the clear and unequivocal language necessary to establish Congressional intention to withdraw jurisdiction from the Court of Federal Claims, we cannot find that the statute is effective to withdraw jurisdiction over the contract dispute alleged here. Plaintiff is entitled under the Tucker Act to its day in court." Cardiosom, 656 F.3d at 1331.  Notably, the court held that the same logic applies with regard to the court's jurisdiction over plaintiff's takings claims.  Id.

The Federal Circuit's opinion in Cardiosom, however, expressly left open two questions.  The first is "whether an aggrieved supplier who obtains only a partial recovery of damages through the administrative process— i.e., for those elements of damage recoverable through that process— could thereafter maintain a court suit for other damage elements, such as loss of profits (assuming the terms of the original contract do not preclude such additional elements of damage)."  Id. at 1329.  The second is "whether there is any obligation on the part of the aggrieved supplier to exhaust its administrative remedies by first filing its claim under the administrative process before exercising its right to a suit in the Court of Federal Claims."  Id.

For purposes of the court's jurisdictional analysis, the plaintiffs at bar fall into one of three categories, as noted above. First, Discount Diabetic and DDS Holdings participated in the CMS administrative process and received no compensation. Second, Florida Home Medical Supply participated in the CMS administrative process and obtained partial payments of its claim. And third, the remaining eleven plaintiffs elected not to participate in the administrative process and filed claims directly with this court.

A. CMS administrative process is not the exclusive remedy

For those plaintiffs that exhausted the CMS administrative process, the court need only look to the Federal Circuit's decision in Cardiosom to conclude that it retains jurisdiction. The Circuit held, in Cardiosom, that MIPPA "left untrammeled the subject matter jurisdiction of the Court of Federal Claims to hear and decide breach of contract claims resulting from these terminations." Cardiosom, 656 F.3d 1331. In explaining the purpose of MIPPA, the court stated that the statute "clears away the prior administrative actions in awarding contracts under the old law and leaves the Secretary free to undertake further administrative contract actions without the hinderance [sic] of the prior arrangements, but leaves unaffected the rights and remedies created by the Government's prior contractual obligations." Id. (emphasis added).

In coming to this conclusion, the court applied the uncontroversial maxim that "[f]or a statute to reinstate the government's sovereign immunity, Congress must manifest an 'unambiguous intention to withdraw the Tucker Act remedy.'" Id. at 1329 (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1019 (1984)) (also citing Slattery v. United States, 635 F.3d 1298, 1301 (Fed. Cir. 2011)). Because the court was able to identify three plausible interpretations of the MIPPA provision "[w]ith only a little effort," id. at 1327, it held that the provision was ambiguous, and therefore, did not reinstate the government's immunity. "The existence of reasonable interpretations that are consistent with the Tucker Act's waiver of sovereign immunity compel a finding that the 2008 Amendment did not manifest the necessary 'unambiguous intention to withdraw the Tucker Act remedy.'" Id. at 1330 (quoting Ruckelshaus, 467 U.S. at 1019).

In its motion to dismiss, defendant fundamentally misconstrues the Federal Circuit's Cardiosom opinion. Defendant acknowledges that Cardiosom is binding precedent, see ECF No. 13 at 16, but goes on at length arguing that this court should apply one of the three alternative interpretations for the MIPPA provision identified in that decision, see id. at 17-27. The Federal Circuit's analysis, however, did not identify the alternative interpretations and invite this court to choose between them. Rather, the plausible, alternative explanations served as an illustration of the court's conclusion that the provision was ambiguous.

Plaintiff's invocation of the Chevron analysis is also misplaced. As this court has previously explained, "[t]he Supreme Court has concluded that Chevron deference applies to an agency's interpretation of its own jurisdiction, making clear, however, that agency jurisdiction and federal court jurisdiction are distinct concepts." Cardiosom, L.L.C. v. United States, 115 Fed. Cl. 761, 769 n.1 (Fed. Cir. 2014) (emphasis in original) (citing City of Arlington v. F.C.C., 133 S.Ct. 1863, 1868 (2013)). See also B&H Med. v. United States, 116 Fed. Cl. 671, 680 n.1 (citing City of Arlington, 133 S.Ct. at 1868).

As a result, regardless of how this court resolves the questions left open by the Federal Circuit in Cardiosom, the court has subject matter jurisdiction over the claims asserted by Discount Diabetic and DDS Holdings.

B. CMS administrative process resulting in partial payment

The first question identified, but not answered, by the Federal Circuit is:

> whether an aggrieved supplier who obtains only a partial recovery of damages through the administrative process—i.e., for those elements of damage recoverable through that process—could thereafter maintain a court suit for other damage elements, such as loss of profits (assuming the terms of the original contract do not preclude such additional elements of damage).

Cardiosom, 656 F.3d at 1329. Because the cases at bar involves one party, Florida Home Medical Supply, that received a partial payment through the CMS administrative process, this question is now properly before the court.

In its motion to dismiss, defendant argues that CMS, in fact, answered this question by providing the administrative remedy. According to defendant, "it is clear that in promulgating the regulations establishing the administrative process, CMS interpreted the statute as reflecting congressional intent to give terminated suppliers only one forum, the administrative process, for seeking damages from the Medicare Trust Fund." ECF No. 13 at 20. This argument is simply a rehash of defendant's exclusive remedy argument, which the Federal Circuit has already rejected.

To find that this court is without jurisdiction to hear a claim brought by a plaintiff that received partial payment through the CMS administrative process, the court would have to determine that MIPPA "unambiguously" withdrew jurisdiction. See Cardiosom, 656 F.3d at 1325 (citing Slattery, 635 F.3d at 1301 ("[A] claim that is within the subject matter of the Tucker Act is not excluded from the jurisdiction of the Court of Federal Claims . . . unless such jurisdiction has been unambiguously withdrawn or withheld by a statute specifying such exclusion.").

In MIPPA, Congress identified the source from which any damages would be paid as the Federal Supplementary Medical Insurance Trust Fund.  See 42 U.S.C. § 1395w-3(a)(1)(D)(i)(I) (2012) ("[T]o the extent that any damages may be applicable as a result of the termination of such contracts, such damages shall be payable from the Federal Supplementary Medical Insurance Trust Fund under section 1395t of this title.").  It otherwise said nothing about the administrative process by which CMS would pay damages.  The court finds nothing in MIPPA that could be read unambiguously to preclude a claim in this court for additional damages.

Defendant further argues that by hearing a breach of contract claim, this court is, in effect, conducting judicial review of the decisions issued by CMS on plaintiffs' administrative claims.  ECF No. 13 at 20-21.  Defendant contends that such review is precluded by the language of CMS's damages regulation:

> CMS stated that its decision on damages under the administrative process "is final and binding; it is not subject to administrative or judicial review under section 1847(a)(1)(D) of the Act, as amended by section 154(a)(1) of the MIPPA." 74 F.R. at 61936; 42 C.F.R. § 414.425(f)(2)(vi).  If a supplier could circumvent CMS's administrative damages determination by bringing a breach of contract action in this Court, the administrative award would not be "final and binding" and would be effectively subject to judicial review.

Id.

Defendant mischaracterizes the nature of the court's consideration of plaintiffs' claims.  The court is not conducting judicial review of the CMS administrative decision, but is agreeing to hear plaintiffs' breach of contract claims—which are claims that fall squarely within the court's Tucker Act jurisdiction.  Like any other plaintiff asserting a breach of contract claim, these plaintiffs first will have the burden of proving liability. See, e.g., Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1359-60 (Fed. Cir. 2009) (discussing burdens of proof on liability).  If they do so, plaintiffs will then have to prove damages.  See, e.g., SUFI Network Servs., Inc. v. United States, 755 F.3d 1305, 1312-13 (Fed. Cir. 2014) (discussing plaintiff's burden of proof in seeking lost-profits damages); Roseburg Lumber Co. v. Madigan, 978 F.2d 660, 667 (Fed. Cir. 1992) ("Absent tangible proof of damages, [a party] may not recover for an alleged injury."); DMS Imaging, Inc. v. United States, 123 Fed. Cl. 645, 655-56 (2015) (discussing plaintiff's burden of proof in seeking expectation damages).  The evidence that plaintiffs may offer is governed by the relevant rules of this court, and is not limited to the information previously provided to CMS.

The court's review of an agency decision is conducted differently. Such review is limited to an administrative record and is conducted under a deferential "arbitrary, capricious, contrary to law, or unsupported by substantial evidence" standard. See, e.g., Sieben v. United States, 108 Fed. Cl. 1, 5 (2012) (reviewing military pay claim under deferential "arbitrary, capricious, contrary to law, or unsupported by substantial evidence"); White & Case LLP v. United States, 89 Fed. Cl. 12, 19 (2009) (review claims brought under moiety statute, 19 U.S.C. § 1619(c) under deferential "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, procedurally defective, or unsupported by evidence in the record" standard); Winuk v. United States, 77 Fed. Cl. 207, 213 (2007) (reviewing claim brought under the Public Safety Officers' Death Benefits Act (PSOBA) under deferential arbitrary, capricious, or substantial evidence standard); Wardlaw Farms, Inc. v. United States, 32 Fed. Cl. 475, 478 (1994) (reviewing final agency action under "rationality" test, "rather than 'de novo' review of a breach of contract claim").

That plaintiffs might receive damages from the court exceeding the damages awarded by CMS does not, in and of itself, transform a breach of contract claim into judicial review. Thus, the court has subject matter jurisdiction over the claims asserted by Florida Home Medical Supply.

C. CMS administrative process is permissive, not mandatory

The second question left open by the Federal Circuit in Cardiosom is "whether there is any obligation on the part of the aggrieved supplier to exhaust its administrative remedies by first filing its claim under the administrative process before exercising its right to a suit in the Court of Federal Claims." Cardiosom, 656 F.3d at 1329. Eleven plaintiffs in the cases now before the court have not filed claims with CMS. As such, the court must now resolve this question.

Exhaustion is an affirmative defense. See, e.g., Jones v. Bock, 549 U.S. 199, 212 (2007) ("[T]he usual practice under the Federal Rules [8(a) and 8(c)] is to regard exhaustion as an affirmative defense.");[4] Fluker v. Cty. of Kankakee, 741 F.3d 787, 792 (7th Cir. 2013) (identifying failure to exhaust as an affirmative defense). An affirmative

[4] "[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure." RCFC rules committee's note to 2002 amendment, at 1. RCFC 8(a) is identical to Fed. R. Civ. P. 8(a), and RCFC 8(c) is identical in all relevant respects here to Fed. R. Civ. P. 8(c). Therefore, the court relies on cases interpreting Fed. R. Civ. P. 8(a) and 8(c), as well as those interpreting RCFC 8(a) and 8(c).

defense may be asserted in either the responsive pleading or in a motion. See RCFC 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . .").

Defendant has not filed an answer in any of the consolidated cases. Instead, prior to consolidation, defendant filed motions to dismiss the complaint in each case. In those motions, defendant noted that the eleven plaintiffs had not exhausted the CMS administrative remedy. See Advacare Home Servs. et al., Case No. 14-590, ECF No. 14 at 9 (defendant's motion to dismiss stating that plaintiff had not participated in the administrative claims process); All-States Med. Supply, Case No. 14-594, ECF No. 13 at 8-9 (same); Am. Home Health Care, Case No. 14-599, ECF No. 10 at 9; Plus Med., Case No. 14-600, ECF No. 15 at 9 (same).

Defendant did not assert exhaustion as an affirmative defense in any of its motions to dismiss, but observed that whether exhaustion was required is "unresolved." Advacare Home Servs. et al., Case No. 14-590, ECF No. 14 at 9; All-States Med. Supply, Case No. 14-594, ECF No. 13 at 9; Am. Home Health Care, Case No. 14-599, ECF No. 10 at 8-9 (same); Plus Med., Case No. 14-600, ECF No. 15 at 8 (same).

For a number of other affirmative defenses, defendant's silence would end the court's inquiry. The court, however, must press further here to determine whether the exhaustion requirement is jurisdictional or permissive. As the United States Supreme Court has explained:

> [M]andatory language means a court may not excuse a failure to exhaust . . . No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. See McKart v. United States, 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies . . . is, like most judicial doctrines, subject to numerous exceptions"). But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion. See, e.g., McNeil v. United States, 508 U.S. 106, 111 (1993) ("We are not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies").

Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016). Shortly before the Supreme Court issued the Ross decision, this court also noted the two forms of exhaustion, holding that

"[s]tatutory exhaustion is jurisdictional, but prudential exhaustion is not." Fredericks v. United States, 125 Fed. Cl. 404, 411 (2016) (citing Omni Moving & Storage of Virginia, Inc. v. United States, 21 Cl. Ct. 224, 230 (1990)). Mandatory exhaustion may be found in either a statute or an agency regulation. See Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1255 (Fed. Cir. 2015) ("Exhaustion may be required by statute, regulation, or judicially-created common law.").

Even if the defendant has not asserted it, the court must consider a jurisdictional affirmative defense. See SKF USA, Inc. v. U.S. Customs & Border Protection, 556 F.3d 1337, 1348 (Fed. Cir. 2009) (explaining sua sponte consideration of jurisdictional statute of limitations) (citing John R. Sand & Gravel Co. v. United States, 552 U.S. 130 (2008)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). And, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

As the Federal Circuit has stated that: "Whether a limitation on claims which may be brought against the government is jurisdictional—i.e., limits the scope of the Government's waiver of sovereign immunity—or is merely an affirmative defense that may be raised by the Government, depends on the language and context of the statute at issue." Blueport Co., LLC v. United States, 533 F.3d 1374, 1379-80 (Fed. Cir. 2008) (citing John R. Sand & Gravel Co., v. United States, 552 U.S. 130, 134-35 (2008); United States v. Brockamp, 519 U.S. 347, 352–54 (1997); United States v. Beggerly, 524 U.S. 38, 48–49 (1998)).

A review of previous Federal Circuit rulings assists the court in defining the boundaries of this context-specific inquiry. In Palladian Partners, the Federal Circuit reviewed Small Business Administration regulation 13 C.F.R. § 121.1102 and found that it included a jurisdictional exhaustion requirement. See Palladian Partners, 783 F.3d at 1255. The relevant text of § 121.1102 is as follows:

> [North American Industry Classification System (NAICS)] code designation made by a procuring activity contracting officer may be appealed to [U.S. Small Business Administration Office of Hearings & Appeals (OHA)]. . . . The OHA appeal is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court.

13 C.F.R. § 121.1102 (emphasis added). The Federal Circuit determined that pursuant to this "mandatory language," a plaintiff challenging a NAICS code must first exhaust its administrative remedies prior to filing claim in this court. See Palladian Partners, 783

F.3d at 1255.

In contrast, this court found that an exhaustion requirement in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("Relocation Act") was not jurisdictional in Rollock Company v. United States. See 115 Fed. Cl. 317, 331-32 (2014). The court held that both the relevant statute and regulations were written in permissive terms:

> The statute states that the "head of the lead agency is authorized to issue such regulations and establish such procedures as he may determine to be necessary." 42 U.S.C. § 4633(b) (emphasis added). Congress did not even mandate the existence of an agency appeals process under the Relocation Act. . . . [T]he relevant regulation, found at 49 C.F.R. § 24.10, does not provide a comprehensive scheme for appeals. . . . [Instead,] [s]ubsection 24.10(b) states that "[a]ny aggrieved person may file a written appeal." 49 C.F.R. § 24.10(b) (emphasis added).

Id. Citing the lack of "an expression of explicit intent from Congress and given the permissive nature of the pertinent regulations," the court concluded that the exhaustion of administrative remedies was not necessary before filing a Relocation Act claim in this court. Id. at 332.

Here, with regard to the MIPPA provision at issue, the court notes that Congress identified the source from which damages payments would be made, if damages were appropriate, but otherwise made no express mention of an administrative remedy. See 42 U.S.C. § 1395w-3(a)(1)(D)(i)(I). Pursuant to this statutory authorization, CMS promulgated a "Claims for damages" regulation, specifically 42 C.F.R. § 414.425, which provides in pertinent part that:

> Any aggrieved supplier . . . that was awarded a contract for the Round 1 Durable Medical Prosthetics, Orthotics, and Supplies Competitive Bidding Program (DMEPOS CBP) that believes it has been damaged by the termination of its competitive bid contract, may file a claim under this section.

42 C.F.R. § 414.425(a)(1) (emphasis added). Further, "[a] completed claim . . . must be filed within 90 days of January 1, 2010 (the effective date of these damages provisions) . . . ." 42 C.F.R. § 414.425(b)(1) (emphasis added).

An aggrieved supplier "may" file a claim for damages pursuant to the regulation.

But if the supplier chooses to do so, it "must" file its claim by April 1, 2010. That the permissive term "may"—which applies to the claims filing requirement—is contained within the same regulation as the mandatory term "must"—which applies to the deadline—is telling. In addressing such a circumstance,

> [t]he Supreme Court has noted that "the word 'may,' when used in a statute, usually implies some degree of discretion." United States v. Rodgers, 461 U.S. 677, 706 (1983); see also McBryde v. United States, 299 F.3d 1357, 1362 (Fed. Cir. 2002). That common-sense principle is especially applicable "when the same [provision] uses both 'may' and 'shall,' [because] the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." Anderson v. Yungkau, 329 U.S. 482, 485 (1947). However, Congress's use of the two terms "may" and "shall" does not end the analysis of whether arbitration is mandatory. Instead, the use of the word "may" to denote discretion "is by no means invariable, . . . and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." Rodgers, 461 U.S. at 706.

Kentucky v. United States, 424 F.3d 1222, 1227 (Fed. Cir. 2005).

Informed by these principles of interpretation, the court finds no express language requiring a supplier to file an administrative claim. Nor can the court discern any "obvious inferences" or "legislative intent" that would require a finding of mandatory exhaustion. Kentucky, 424 F.3d at 1227. Like the statute and regulation in Rollock Company, the statute here provides no "expression of explicit intent from Congress." Rollock Co., 115 Fed. Cl. at 332. Thus, the court finds that the CMS administrative process is permissive, not mandatory.

It is well-settled that "in Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit." Martinez v. United States, 333 F.3d 1295, 1304 (Fed. Cir. 2003). Because plaintiffs were under no requirement to administratively exhaust their claims prior to filing suit here, the court has jurisdiction to consider their claims.[5]

---

5 The court notes that plaintiffs in Advacare Home Servs., Inc., et al., Case No. 14-590 argued that, assuming defendant's interpretation of the relevant statutes and regulations relating to the CMS administrative claims process is correct, those provisions are invalid due the deficiencies in the notice given as part of the rule-making process. See Case No. 14-590, ECF No. 16 at 13-15; see also Case No. 14-596, ECF No. 47 at 5-

IV. Conclusion

As the Federal Circuit found in Cardiosom, the court sees no reason to distinguish between plaintiffs' breach of contract claims and takings claims for jurisdictional purposes. See Cardiosom, 656 F.3d at 1331.

For the reasons explained herein, defendant's motion to dismiss the complaint is **DENIED**. See ECF No. 13. Likewise, the motion to dismiss filed in each member case is **DENIED**. See Advacare Home Servs., Inc., No. 14-590, ECF No. 14; All-States Med. Supply, Inc., No. 14-594, ECF No. 13; Am. Home Health Care, Inc., No. 14-599, ECF No. 10; Plus Med., LLC, No. 14-600, ECF No. 15; Discount Diabetic LLC, No. 14-610, ECF No. 13; and DDS Holdings, Inc., No. 14-612, ECF No. 9.

The court's decision on the parties' pending motions for summary judgment will be issued in due course. At that time, should further proceedings be required, the court will consider a schedule to govern the cases going forward.

IT IS SO ORDERED.

s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge

6. Because the court disagrees with defendant's interpretation, it makes no finding on this point.